**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 06 C 4286 |
| | ) | |
| EASY DROP OFF, LLC, | ) | |
| d/b/a WESHOCK, INC., and | ) | |
| DR. FRANCIS SADOWSKI, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In this diversity suit,[1] Nautilus Insurance Company seeks a judgment declaring that its general liability insurance policies do not potentially or actually cover any part of the claims stated in a class action lawsuit against its insured Easy Drop Off, LLC brought under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 (the Sadowski suit). Nautilus also seeks a judgment declaring that it has no duty to defend Easy Drop Off in the Sadowski suit. In response, Sadowski cross-moved for summary judgment, and contends that as a matter of law, Nautilus has a duty to defend Easy Drop Off. For the following reasons, the Court denies Nautilus's motion and grants Sadowski's motion.

**Facts**

The facts of this case are similar to the facts in a number of cases on dockets around the

---

[1] Nautilus is an Arizona corporation with its principal place of business in that same state. Easy Drop Off, LLC has two members, who are both Florida citizens. Sadowski is an Illinois citizen.

country, including one previously before the Court. Essentially, the dispute concerns whether Nautilus is required to defend a lawsuit alleging that Easy Drop Off violated the TCPA by sending "junk faxes." In December 2005, Sadowski filed a class action lawsuit alleging that Easy Drop Off transmitted unsolicited facsimile advertisements in violation of the TCPA. In August 2006, Nautilus filed this declaratory judgment action against Easy Drop Off and Sadowski seeking a declaration that Nautilus has no duty to defend or indemnify Easy Drop Off in the Sadowski suit. Easy Drop Off, though served with the complaint filed in the declaratory judgment suit, has yet to appear or file a responsive pleading. On January 4, 2007, the Court entered an order of default against Easy Drop Off but deferred consideration of whether to enter an order of default judgment until after determination of the other parties' summary judgment motions.[2] Sadowski has responded to Nautilus' motion and has cross-moved for summary judgment.

The insurance policies at issue contain two clauses that Sadowski contends requires Nautilus to defend the Sadowski suit. The first clause requires Nautilus to defend any lawsuit seeking damages for advertising injuries. Advertising injuries are defined as "oral or written publication of material that violates a person's right to privacy." Compl. ¶ 26. The second clause requires Nautilus to defend any lawsuit seeking property damages unless the insured expected or intended the property damage to occur. Because the interpretation of the advertising injury provision is dispositive of the pending motions, the Court will limit its analysis to that provision.

---

[2] The docket entry for January 4, 2007 is somewhat ambiguous, but the statement in the text of this decision accurately reflects the action the Court took on that date.

**Discussion**

When a district court rules on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Entry of summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

When a district court exercises diversity jurisdiction, it must apply state law as the highest court of that state would apply it. *See AAR Aircraft & Engine Group, Inc. v. Edwards*, 272 F.3d 468, 470 (7th Cir. 2001). In this case, the parties agree that Florida law applies. The Florida Supreme Court and the Florida appellate courts have not addressed whether an insurer issuing a policy covering "advertising injury" has a duty to defend TCPA lawsuits. This Court therefore must predict what the Florida Supreme Court would do if presented with this issue. *See Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004).

Nautilus relies heavily on the Seventh Circuit's decision in *American States Ins. Co. v. Capital Assocs. of Jackson County, Inc.*, 392 F.3d 939 (7th Cir. 2004), to support its argument that the Florida Supreme Court would find no coverage for TCPA lawsuits. In *American States*, the court, attempting to predict Illinois law, held that an insurer had no duty to defend a TCPA suit because a junk fax lawsuit only alleges violations of seclusion interests not privacy interests, and an "advertising injury" provision only covers acts that "violate[] a person's right to privacy." *Id.* at 942-43. In fact, Nautilus goes so far as to argue that in the absence of a Florida case addressing the issue, *American States* is "authoritative" and "should govern the outcome of this

3

case." Mem. at 4-5. This contention grossly misstates the law. *American States* only bound district courts in this Circuit deciding cases under Illinois law before the Illinois Supreme Court addressed the issue. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) ("A decision by a state's supreme court terminates the authoritative force of our decisions interpreting state law, for under *Erie* our task in diversity litigation is to predict what the state's highest court will do. Once the state's highest court acts, the need for prediction is past."). In *Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 860 N.E.2d 307 (2006), the Illinois Supreme Court specifically disagreed with *American States* and held that an "advertising injury" provision includes coverage for junk fax suits.

In its motion, Nautilus fails to mention *Valley Forge* or any of the many other cases that reach the same result. Regardless, the Court is not bound to follow *American States* because this case involves the application of Florida law, not Illinois law. Nautilus suggests that the Court begin its analysis by applying *American States* because it provides "the most logical analysis of the policy provisions at issue." Reply Mem. at 6. The Court disagrees. Rather, *Valley Forge* is the logical place to begin. As discussed below, Florida and Illinois courts routinely use the same methods to construe insurance policies. Using these methods, the Illinois Supreme Court expressly rejected the reasoning and holding of *American States*. It makes no sense, therefore, to begin an analysis of Florida law by looking to *American States*.

Nautilus argues that "the rulings of the Illinois Supreme Court are not more helpful in predicting Florida law than the rulings of any other jurisdiction in the United States" because "[t]here is no evidence . . . that the Supreme Court of Florida gives more deference to the decisions of the Illinois Supreme Court than to the decision of any other courts." Reply Mem. at

4

2-3. That, however, is not the point. The Court is not concerned with the degree of deference the Florida Supreme Court may give to decisions of the Illinois Supreme Court. What matters is that *Valley Forge*, the only state supreme court case that has construed an "advertising injury" provision identical to the one in this case, followed insurance policy interpretation rules similar to those used by Florida courts.

In *Valley Forge*, the court began its analysis by setting forth the principles Illinois courts use to construe insurance policies. The court identified several relevant principles: a court's primary objective in construing policy language is to ascertain and give effect to the intentions of the parties as expressed in the insurance policy; the policy is to be construed as a whole, giving effect to every provision; if the terms are unambiguous, they are to be applied as written; and if the words used are ambiguous, they will be construed against the drafter. *Valley Forge*, 223 Ill. 2d at 362-63, 860 N.E.2d at 314.

The policies in *Valley Forge*, like the Nautilus policy, defined "advertising injury" as "written . . . publication . . . of material that violates a person's right of privacy." The Illinois Supreme Court noted that the case law is clear that receipt of an unsolicited fax advertisement implicates a person's right of privacy by violating his seclusion; such a violation is one of the injuries the TCPA attempts to prevent. *Id.* at 365, 860 N.E.2d at 315 (citing, *inter alia*, *Park Univ. Enters., Inc. v. American Cas. Co. of Reading, Pa.*, 442 F.3d 1239, 1249 (10th Cir. 2006); *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 639-40 (4th Cir. 2005); *Am States*, 392 F.3d at 942)).

The court then analyzed whether the words in the "advertising injury" provision indicate that the parties intended the policy to cover the type of injury to privacy implicated by the TCPA

5

suit. *Valley Forge*, 223 Ill. 2d at 366, 860 N.E.2d at 316. Like the Nautilus policies, the policies in *Valley Forge* did not define the terms "publication," "material," or "right of privacy." Consistent with Illinois law, the court afforded these terms their plain, ordinary, and popular meanings. *Id.* The court determined that "publication" meant communication or "announcing to the public" and that "material" was broad enough to include advertisements. The court then concluded, based on standard dictionary definitions, that the plain meaning of "right of privacy" connoted both an interest in seclusion and an interest in secrecy of personal information. Based on this construction, the court held that the unsolicited fax advertisements at issue in the TCPA suits fell within the definition of "advertising injury." *Id.* at 368, 860 N.E.2d at 317. The court specifically rejected the Seventh Circuit's analysis in *American States* as inconsistent with Illinois' approach to interpreting insurance policy provisions. *Id.* at 378, 323.

Having set forth the Illinois Supreme Court's position on an insurer's duty to defend TCPA claims under an "advertising injury" provision, the Court must determine whether the Florida Supreme Court is likely to reach the same conclusion. Nautilus does not cite any Florida case suggesting that Florida courts interpret insurance polices differently than their Illinois counterparts. To the contrary, the case law indicates that Florida and Illinois courts construe policies in a similar fashion. For example, under Florida and Illinois law, undefined policy terms are given their plain and ordinary meaning instead of a technical meaning. *See Fayad v. Clarendon Nat'l Ins. Co.*, 899 So.2d 1082, 1088 (Fla. 2005); *Gillen v. State Farm Mut. Auto. Ins. Co.*, 215 Ill. 2d 381, 393, 830 N.E.2d 575, 582 (2005). The duty to defend is determined by comparing the allegations in the underlying complaint to the insurance policy. *See State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1077 n.3 (Fla. 1998); *Outboard Marine*

6

*Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 108, 607 N.E.2d 1204, 1212 (1992). And significantly, both Florida and Illinois courts require an insurer to defend an insured if a claim is potentially within the scope of the policy's coverage. *Grissom v. Commercial Union Ins. Co.*, 610 So.2d 1299, 1307 (Fla. 1st DCA 1992); *Outboard Marine Corp.*, 154 Ill.2d at 108, 607 N.E.2d at 1212. Both states' courts construe an insurance policy liberally and resolve any doubts in favor of imposing a duty to defend. *Flores v. Allstate Ins. Co.*, 819 So. 2d 740, 751 (Fla. 2002); *U.S. Fidelity & Guaranty Co. v. Wilkin Insulation*, 144 Ill. 2d 64, 74, 578 N.E.2d 926, 930 (1991).

Simply put, based on the Florida case law, there is no reason to conclude that the Florida Supreme Court would construe "advertising injury" differently from the Illinois Supreme Court. The Court concludes that the Florida Supreme Court would find that the "advertising injury" provision in the Nautilus policies would provide coverage for the Sadowski suit.

In light of the Court's conclusion, it is appropriate to vacate the order of default entered against Easy Drop Off. Sadowski has, in effect, litigated the case on Easy Drop Off's behalf. Because Sadowski has prevailed, Easy Drop Off is equally entitled to prevail.

**Conclusion**

For the foregoing reasons, the Court denies Nautilus's motion for summary judgment [docket no. 17] and grants Sadowski's motion for summary judgment [docket no. 26]. The order of default entered against defendant Easy Drop Off, LLC is vacated. The Clerk is ordered to

enter judgment in favor of the defendants.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 4, 2007